**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert A. ROSE, Defendant–Appellant.**

**No. 88–3017.**

United States Court of Appeals,
Seventh Circuit.

Argued June 14, 1989.

Decided Aug. 1, 1989.

Jeffrey Anderson, Asst. U.S. Atty., Madison, Wis., for plaintiff-appellee.

Peter L. Steinberg, King Street Alternative Law Office, Inc., Madison, Wis., for defendant-appellant.

Before POSNER and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

POSNER, Circuit Judge.

Robert Rose was convicted of distributing "1 gram or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD)." 21 U.S.C. § 841(b)(1)(B)(v). The minimum sentence for the violation of this provision is five years in prison without possibility of parole, see § 841(b)(1)(B); the judge sentenced Rose to this term and tacked on four years of supervised release. Rose challenges the constitutionality of the provision under which he was sentenced. He emphasizes that the net weight of LSD in the 472 dosage units that he sold the government's undercover agent was only .01787 grams (that is, less than 2 percent of a gram). What carried him over the one-gram threshold was the "blotter paper" (weighing 7.3 grams), saturated with the LSD, that was the actual substance that he sold the agent. (Although called blotter paper, this is not the sort of thick blotter paper that is used for blotting ink.) Had the defendant sold a substance containing LSD but weighing less than a

gram, there would have been no mandatory minimum penalty. See § 841(b)(1)(C).

■ In his eagerness to present a constitutional challenge, Rose virtually concedes that the LSD-saturated blotter paper was the mixture or substance whose weight determines the gravity of the offense under § 841(b)(1)(B)(v). The concession is supported by authority. See Sentencing Guidelines § 2D1.1; *United States v. Taylor*, 868 F.2d 125, 127 (5th Cir.1989); *United States v. McGeehan*, 824 F.2d 677, 681 (8th Cir.1987) (dictum); *United States v. Marshall*, 706 F.Supp. 650, 652–54 (C.D.Ill. 1989); *United States v. Bishop*, 704 F.Supp. 910, 912 (N.D.Iowa 1989). Drugs are rarely taken in undiluted form. The active agent is combined with inactive ones. LSD, which is so potent that a pure dose would be a barely visible droplet, is commonly ingested in either of two forms. The first is by swallowing a sugar cube or candy that has been soaked with LSD in an alcohol solution. The second involves the blotter paper, usually an 8 by 5 inch sheet sectioned off in little squares, each with a spot of LSD in an alcohol solution on it. The user cuts off one of the squares and swallows it, or dissolves it in a beverage. In combination with the blotter paper, the quantity of LSD that Rose sold supplied almost 500 doses. If the paper had weighed only a seventh as much (bringing the sale down to the minimum weight that triggers the five-year no-parole minimum term in section 841(b)(1)(B)(v)), the sale would still have been of 70 doses—a nontrivial amount. A lighter carrier than paper (remember that this is not "blotter paper" in the conventional sense) is hard to imagine. We hold that the paper carrier in which LSD is sold, like the LSD-saturated sugar cube or candy, is a "substance or mixture containing a detectable amount of [LSD]." And it is therefore the weight of the carrier plus the LSD, rather than of the LSD alone, that determines the gravity of the offense.

Section 841(b)(1)(B)(v) sets widely varying minimum weights as the trigger points for the mandatory minimum prison terms fixed by the statute—100 grams for heroin, 500 grams for cocaine, 100 kilograms for marijuana, and so on, down to 1 gram for LSD. See §§ 841(b)(1)(B)(i)–(viii). Rose argues that these disparities are irrational, and therefore violate the equal protection clause. Noting that one hundred kilograms is 100,000 times 1 gram, he asks rhetorically whether LSD is 100,000 times more dangerous than marijuana. He goes further, and argues that LSD is not dangerous at all. But in so arguing he has mischaracterized the principal study that he cites—Hofmann, *LSD: My Problem Child* (1980), written by the Swiss chemist who invented LSD. While Dr. Hofmann states that "genuine addiction, characterized by the fact that psychic and often severe physical disturbances appear on withdrawal of the drug, has not been observed, even in cases in which LSD was taken often and over a long period of time," and "no organic injury or death as a direct consequence of an LSD intoxication has yet been reported," *id.* at 66, he goes on to observe that LSD intoxication can cause "lasting mental injury" to unstable persons, occasionally precipitating suicide, and to youths. *Id.* at 70.

■ Rose's constitutional challenge would fail no matter how we might characterize the dangers LSD presents. This would be clear if the various drug prohibitions were scattered throughout the federal statute books rather than consolidated in a handful of sections in Title 21. The Constitution has not been interpreted to require that the pattern of punishments for different federal crimes compose a harmonious whole. Such a requirement would be unrealistic. Criminal statutes are enacted at different times, in different moral and penological climates, and in response to the pressures of different groups in the community. Sometimes federal criminal statutes enacted at different times impose different punishments for the same crime, leaving the prosecutor free to pick and choose. See, e.g., *Edwards v. United States*, 814 F.2d 486, 490 (7th Cir.1987). Often the punishments for two crimes will differ by a greater margin than can be explained by differences in the gravity of the crimes or in the ease of detecting their

commission. "Present statutory criminal law on the Federal level is often a hodge-podge of conflicting, contradictory, and imprecise laws with little relevance to each other or to the state of the criminal law as a whole." S.Rep. No. 605, 95th Cong., 1st Sess. 1 (1977); *Dissenting View of Commissioner Paul H. Robinson on the Promulgation of Sentencing Guidelines by the United States Sentencing Commission* 10–12 (G.P.O. May 1, 1987). It has never been considered a feasible judicial undertaking to rationalize, to codify—realistically, to rewrite—the federal criminal code in order to make it the product of a single mind, or of a single overarching conception of rational punishment, urgent as this task may well be, see, e.g., *United States v. D'Antoni*, 874 F.2d 1214, 1221–22 (7th Cir.1989) (concurring opinion). The 10,000 separate federal criminal prohibitions cannot be made consistent by a process of case-by-case decision, the only process available to the courts to use. Within broad limits not exceeded by Congress's determination to punish heavily the distribution of commercially significant quantities of LSD (remember that Rose was punished for selling almost 500 doses or servings of the drug), judgments concerning what conduct should be made criminal and how heavily it should be punished are for Congress rather than courts to make. See, e.g., *United States v. Holmes*, 838 F.2d 1175, 1177–78 (11th Cir.1988).

■ This discussion answers Rose's further contention that a sentence of five years in prison without possibility of parole was so disproportionate to the gravity of his crime as to impose cruel and unusual punishment. See, e.g., *id.* at 1178–79; *United States v. Serhant*, 740 F.2d 548, 554–55 (7th Cir.1984). Believing "that the federal government's most intense focus ought to be on major traffickers" in illegal drugs, Congress, "after consulting with a number of DEA agents and prosecutors about the distributions patterns for these various drugs ... selected quantities of drugs which if possessed by an individual would likely be indicative of operating at such a high level." H.R.Rep. No. 845, 99th Cong., 2d Sess. 11–12 (1986). Rose was

operating on an even larger scale than contemplated by Congress in fixing a minimum sale quantity for LSD. Congress's determination that LSD is a dangerous drug was not irrational, and once made justified a heavy sentence for so major a trafficker in LSD as Rose appears to be. A five-year sentence is not considered especially severe by our society today, and the unavailability of parole no longer marks section 841(b)(1)(B)(v) as unusually harsh, since parole has been abolished for all federal crimes.

■ Which brings us to the final issue. Judge Shabaz did not base the sentence he gave Rose on the Sentencing Guidelines, although they are applicable to this case, because he held them unconstitutional. He added, however, that if he had thought the Guidelines valid he would have imposed the same sentence under them. Such a "conditional sentence" is improper. *United States v. Agyemang*, 876 F.2d 1264, 1269–70, 1274–75 (7th Cir.1989). But in this case, unlike *Agyemang*, the defendant is not asking to be sentenced under the Guidelines, and we know of no basis in reason or authority for ordering a defendant resentenced when neither party asks for resentencing. Rose's decision not to ask for resentencing is entirely understandable, since, as we shall see, under the Guidelines he would almost certainly receive a longer sentence than the judge imposed. The government did not appeal the sentence. Had either party appealed, there would have had to be a remand for resentencing. See *United States v. Agyemang*, *supra*, at 1274–75; *United States v. Bolding*, 876 F.2d 21, 23 (4th Cir.1989).

We add for future reference that five years in prison does not appear to be a proper sentence under the Guidelines, given the character of Rose's crime. When the district judge announced what Rose's sentence would have been under the Guidelines, he used the weight of the LSD itself, without the blotter paper. This was an error, for the Guidelines make clear that in scaling base offense levels for drug crimes up or down depending on the quantity sold, the judge must use the total weight of the

mixture or substance containing the drug. See Sentencing Guidelines § 2D1.1; *United States v. Taylor, supra.* This would push the Guidelines range for Rose up to 97–121 months. This is just the beginning, and other adjustments might bring it down (or up). Because the district judge used a much lower weight figure, he concluded that the starting range was 6–12 months, which he raised to five years only because that was the statutory minimum. However, as we said earlier, neither party challenges the judge's failure to sentence Rose under the Guidelines, and the sentence will therefore stand.

AFFIRMED.