UNITED STATES of America, Appellee,

v.

Sidney Wayne BISHOP, a/k/a "Sid", Appellant.

UNITED STATES of America, Appellee,

v.

Jerald James AYERS, Appellant.

UNITED STATES of America, Appellee,

v.

Jimmy Steven JILEK, Appellant.

UNITED STATES of America, Appellee,

v.

William J. EMANUEL, Appellant.

UNITED STATES of America, Appellee,

v.

Michael Joseph MCGUIRE, Appellant.

Nos. 89–1221, 89–1278, 89–1279, 89–1450 and 89–1522.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1989.

Decided Jan. 22, 1990.

Rehearing and Rehearing En Banc Denied in No. 89–1279 March 7, 1990.

Rehearing and Rehearing En Banc Denied in No. 89–1278 March 8, 1990.

Rehearing and Rehearing En Banc Denied in No. 89–1221 March 12, 1990.

---

Michael E. Sheehy, Cedar Rapids, Iowa, for appellant Bishop.

Stephen A. Swift, Cedar Rapids, Iowa, for appellant Ayers.

Russell Schroeder, Jr., Charles City, Iowa, for appellant Jilek.

Patricia M. Hulting, Des Moines, Iowa, for appellant William J. Emanuel.

Paul D. Scott, Des Moines, Iowa, for appellant Michael Joseph McGuire.

Paul C. Lillois, Cedar Rapids, Iowa, Lester A. Paff, Des Moines, Iowa, for appellee U.S.

Before JOHN R. GIBSON and WOLLMAN, Circuit Judges, and ROSS, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

These cases raise the common issue of whether, in sentencing a defendant convicted of possessing or distributing lysergic acid diethylamide (LSD) under the United States Sentencing Guidelines, the offense level is based solely upon the weight of the pure LSD or upon the combined weights of the LSD and the blotter paper used as a carrier for the drug. All of the appealing defendants were sentenced under the Guidelines based upon the weight of both the pure drug and the blotter paper. The appellants collectively argue that including the weight of the blotter paper in determining the weight of the controlled substance contravenes the intent of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(v) (1982 & Supp. V 1987), violates the due process and equal protection clauses of the Constitution, and conflicts with the goals of the Guidelines; and that the statutory language is unconstitutionally vague. For the reasons discussed below, we affirm the judgments of the district courts.

Sidney Wayne Bishop, Jerald James Ayers, and Jimmy Steven Jilek were charged as co-defendants with various offenses in-

volving the distribution of LSD. Bishop, appellant in 89–1221, pled guilty to one count of distributing approximately one gram or more of a mixture or substance containing LSD in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(v), and 18 U.S.C. § 2; and to one count charging him with conspiracy to distribute and possession with intent to distribute approximately ten grams or more of a mixture or substance containing LSD in violation of 21 U.S.C. § 846.

Ayers, appellant in 89–1278, pled guilty to the second of the two counts enumerated above. Jilek, appellant in 89–1279, was convicted after a trial by a jury of four counts: two counts of distributing one gram or more of a mixture or substance containing LSD in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(v), and 18 U.S.C. § 2; one count of distributing ten grams or more of a mixture or substance containing LSD in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(v), and 18 U.S.C. § 2; and to one count of conspiracy to distribute and possession with intent to distribute ten grams or more in violation of 21 U.S.C. § 846.

Before sentencing, all parties stipulated that the total weight of the three exhibits giving rise to the prosecution (the sheets of blotter paper impregnated with LSD) was 19.75 grams, and that the estimated amount of pure LSD contained within the blotter paper, not including the weight of the blotter paper itself, was 263 milligrams.

The order observed that the base offense level would be 18 if the offense level was based on the weight of the LSD without the blotter paper. The district court[1] determined that the sentence should be based upon the total weight of the impregnated blotter paper which resulted in a base offense level of 32. 704 F.Supp. 910, 913 (N.D.Iowa 1989).

In Judge Hansen's order, he referred to testimony during the Jilek trial indicating that users of LSD either licked the LSD from the tab of blotter paper, which dissolved the impregnated LSD with their saliva, or simply chewed and swallowed the small square of blotter paper containing the absorbed LSD. The method of ingestion was a matter of the user's personal preference. Judge Hansen observed that "[w]hat is important is that the blotter paper itself can be and is ingested with the drug much the same as any dilutant or cutting agent would be ingested." *Id.* at 911.

Judge Hansen analyzed the language of 21 U.S.C. § 841,[2] particularly focusing on the language "a mixture or substance containing a detectable amount of [LSD]." He found support for his conclusion that the blotter paper was a "substance" containing a detectable amount of LSD both in the language of the statute itself and in its contrasting treatment of PCP (phencyclidine). For PCP offenses, the statute provides for imposing a penalty based upon either the quantity of pure PCP or the

---

**1.** The Honorable David R. Hansen, United States District Judge for the Northern District of Iowa.

**2.** This section provides in part as follows:

**Unlawful Acts**

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....

**Penalties**

(b) Except as otherwise provided in section 845, 845a, or 845b of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

(1)(A) In the case of a violation of subsection (a) of this section involving—

....

(v) 10 grams or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD)....

....

such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life....

....

(B) In the case of a violation of subsection (a) of this section involving—

....

(v) 1 gram or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD)....

....

such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years....

21 U.S.C. § 841.

quantity of the mixture or substance containing a detectable amount of PCP. From this he concluded that Congress intended that LSD sentences were to be determined by the quantity of a mixture or substance containing a detectable amount of LSD, and *not* by the quantity of pure LSD. *Id.* at 912.

Accordingly, Bishop was sentenced to 121 months, Ayers was sentenced to 78 months, and Jilek was sentenced to 148 months.

William J. Emanuel, appellant in 89–1450, pled guilty to a single count information charging him with violating 21 U.S.C. § 841(b)(1)(A)(v) by possessing with the intent to distribute LSD in an amount weighing in excess of ten grams. Emanuel made the following stipulations for the purpose of the sentencing hearing: LSD is commonly sold in single dosage units contained on blotter paper or sugar cubes with each paper tab or cube containing one dose. According to the user's personal preference, the blotter paper or sugar may or may not be ingested. The Drug Enforcement Agency's dosage equivalency table, contained in the Federal Sentencing Guidelines Manual, page 69, states that the "dosage equivalents provided in these tables reflect the amount of the pure drug in an average dose." According to this table, the average dose of LSD contains .0001 gram pure LSD, and there are 10,000 dosage units in one gram of liquid LSD. The retail value of the 3500 dosage units possessed by Emanuel on October 14, 1988, the date of his arrest, was $3,500. It was also stipulated that a laboratory chemist had determined that the total LSD per weight of dosage unit in percentage per weight ranged from .46 percent to 2.74 percent.

In sentencing Emanuel, the district court[3] considered the weight of both the paper and the drugs. Pursuant to the presentence investigation report and the Guideline tables of Section 2D1.1, the heroin equivalency of the drugs attributed to Emanuel was 11,516.02 grams. This re-

sulted in a base offense level of 36 with a downward departure of two levels for acceptance of responsibility. This made the total offense level 34 and resulted in a sentence of 151 months. The ten year mandatory minimum sentence of 21 U.S.C. § 841(b)(1)(A)(v) was applied. If the sentence calculations had been based on dosage equivalency tables for the LSD only, not considering the paper weight, the heroin equivalency would have been 100.99 grams. This would result in a base offense level of 26, and after departing downward, a total offense level of 24.

Judge Vietor's comments from the bench at Emanuel's sentencing hearing reveal that he adopted the rationale of Judge Hansen in his order concluding that the sentences of Bishop, Jilek, and Ayers should be based upon the weight of the blotter paper and the LSD combined. He also relied upon this court's decision in *United States v. McGeehan*, 824 F.2d 677 (8th Cir. 1987), *cert. denied*, 484 U.S. 1061, 108 S.Ct. 1017, 98 L.Ed.2d 982 (1988).

Michael Joseph McGuire, appellant in 89–1522, was involved in at least one drug transaction with Emanuel, but was charged separately. McGuire pled guilty to a one count information charging him with distributing 3,500 dosage units of LSD in violation of 21 U.S.C. § 841(a)(1). He entered into the stipulation referred to above in which Emanuel was also a party, and was sentenced to 151 months imprisonment (the mandatory minimum sentence was applied). In his order, Judge Vietor held that the weight of the blotter paper was to be included in determining the weight for sentencing purposes.

I.

■ The standard of review of sentences imposed under the Guidelines is mandated by statute. 18 U.S.C. § 3742. Findings of fact are reviewed under the clearly erroneous standard. In the case before us, however, this principle does not apply since the parties stipulated to the facts which are

---

**3.** The Honorable Harold D. Vietor, Chief Judge, United States District Court for the Southern District of Iowa.

relevant to the sentencing considerations, namely, the weight of LSD impregnated blotter paper which determined the sentences in question. The issue before us calls for a purely legal determination of whether, under the statutes and Guidelines, the sentence should be based upon the weight of the blotter paper and LSD combined or solely upon the weight of pure LSD. Since the issue is one of law, we review the district courts' orders on a de novo basis. We are satisfied that the district courts did not err in including the weight of the pure LSD as well as the weight of the blotter paper impregnated with LSD in sentencing the defendants.

This court has had earlier occasions to consider the statute in issue here. In *United States v. McGeehan*, 824 F.2d 677 (8th Cir.1987), *cert. denied*, 484 U.S. 1061, 108 S.Ct. 1017, 98 L.Ed.2d 982 (1988), we discussed an earlier version of the statute which contained the language "5 grams or more of [LSD]." *See* 21 U.S.C. § 841(b)(1)(A)(iv) (Supp. III 1982). In that case, the government asserted that the weight of the drug carrier must be included in the weight of the LSD but we rejected this argument on appeal. By way of contrast in *McGeehan*, we quoted the "mixture or substance" language of the current version of the statute, that which is challenged here, as illustrative of congressional intent to include the weight of the carrier. "This subsequent amendment demonstrates that Congress was aware of the difference between LSD and LSD combined with a carrier substance." 824 F.2d at 681. *See also United States v. Berry*, 876 F.2d 55, 56 (8th Cir.1989) (holding that the statutory language "mixture or substance containing a detectable amount of marihuana" of 21 U.S.C. § 841(b)(1)(A)(vii) required including the weight of the stalks of marihuana in determining the total quantity); *United States v. Brett*, 872 F.2d 1365, 1372 (8th Cir.1989) (holding Fifth Circuit's reasoning persuasive in *United States v. Taylor*, 868 F.2d 125, 127 (5th Cir.1989) that the weight of the distribution medium should be included in the weight of LSD).

"Our starting point, as in all cases involving statutory interpretation, 'must be the language employed by Congress.'" *United States v. Goodyear Tire & Rubber Co.*, —— U.S. ——, ——, 110 S.Ct. 462, 467, 107 L.Ed.2d 462 (1989) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979)). This principle is well-established. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982); *Consumer Product Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

The statute in issue here refers plainly to a "mixture or substance containing a detectable amount" of LSD. The district court concluded that the blotter paper was a "substance containing a detectable amount" of LSD. Its conclusion is supported by the facts found by Judge Hansen that the blotter paper could be ingested with the drug the same as any dilutant or cutting agent, and that the method of ingestion was a matter of the user's personal preference. The stipulation of appellants Emanuel and McGuire contained a similar statement.

Appellants vigorously assert that using blotter paper as a carrier for the LSD provides no greater threat to society than LSD in its pure form and therefore, Congress did not intend that the weight of the paper be included in the weight calculation. This overlooks the fact that "[t]he pure chemical compound of LSD is extremely potent—far too potent to be of any use to those who would ingest it. It is therefore necessary to dilute the solid LSD and convert it into an easily ingestible form." *United States v. Marshall*, 706 F.Supp. 650, 652 (C.D.Ill.1989). *See also United States v. Daly*, 883 F.2d 313, 318 (4th Cir. 1989) (LSD carriers serve same function as cutting agents). The blotter paper serves the purpose of making the LSD ready for retail sale and ingestion by the user. We believe Congress recognized this and intended the weight of the carrier to be included.

Appellants offer examples of LSD being included in suitcases, bricks, etc., to illustrate that absurdity results from including

the weight of the carrier in the weight calculation. We do not believe this parade of horribles requires that we reach a different conclusion here. Our job is not to speculate about "extraordinary circumstances in which a legislative scheme breaks down; we live in a real world, and so apply the law to real world facts.... We will deal with absurd situations when they are before us; for now we will assume that Congress knew distributors like Defendant would be faced with these enhanced sentencing provisions." *Marshall,* 706 F.Supp. at 653.

Emanuel particularly argues that the dictionary definition of "substance" is not satisfied and further that the references in the statute to pharmocological terms limits the meaning of "substance." We are satisfied that the usage of the word "substance" in the statute and as applied by the district court falls squarely within the dictionary definition. Substance means "a distinguishable kind of physical matter." Webster's Third New International Dictionary 2279 4b(1) (1981).

Other circuits have agreed with this interpretation of the statute and included both the weight of the carrier and the drug in the calculation. *See United States v. Daly,* 883 F.2d at 318; *United States v. Taylor,* 868 F.2d 125, 127–28 (5th Cir.1989); *United States v. Rose,* 881 F.2d 386, 388 (7th Cir.1989).

We need not stop with the plain language of the statute, however, as its legislative history reveals that Congress intended the result we reach here. The report of the House Judiciary Committee states:

After consulting with a number of DEA agents and prosecutors about the distributions patterns for these various drugs, the Committee selected quantities of drugs which if possessed by an individual would likely be indicative of operating at such a high level. *The Committee's statement of quantities is of mixtures, compounds or preparations that contain a detectable amount of the drug— these are not necessarily quantities of pure substance.* One result of this market-oriented approach is that *the Com-*

*mittee has not generally related these quantities to the number of doses of the drug that might be present in a given sample.* The quantity is based on the minimum quantity that might be controlled or directed by a trafficker in a high place in the processing and distribution chain.

H.Rep. No. 99–845, 99th Cong., 2d Sess. at 12 (1986) (emphasis added). Our earlier opinion in *McGeehan* recognized that Congress was aware of the difference between LSD and LSD combined with a carrier substance. *See McGeehan,* 824 F.2d at 681.

■ The appellants also raise a due process challenge to section 841. They argue that basing a criminal penalty on the quantity of the drug without regard to the purity of the drug violates due process. Due process is satisfied if the statute bears a "reasonable relation to a proper legislative purpose" and is "neither arbitrary nor discriminatory." *Nebbia v. New York,* 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934). We agree with the other circuits who have confronted this issue and concluded that basing sentencing on the quantity of drugs without regard to purity is reasonably related to the proper legislative purpose of penalizing large volume drug traffickers more harshly. *See United States v. Whitehead,* 849 F.2d 849, 859–60 (4th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988) ("Congress' approach of classifying punishment in relation to the quantity of substances containing narcotics rather than to their purity is rationally related to its goal of sentencing criminals involved in the upper echelons of drug distribution more heavily than those less importantly involved"); *United States v. Klein,* 860 F.2d 1489, 1501 (9th Cir.1988) ("Large-volume dealers, regardless of purity of narcotic, pose a substantial danger to society"); *United States v. Holmes,* 838 F.2d 1175, 1177 (11th Cir.), *cert. denied,* 486 U.S. 1058, 108 S.Ct. 2829, 100 L.Ed.2d 930 (1988) (statute is "rationally related to the Act's objective of protecting the public health and welfare by implementing stiff and certain penalties for those who violate federal drug laws"); *see also United States v. Hoyt,* 879 F.2d 505,

512 (9th Cir.1989); *United States v. Savinovich,* 845 F.2d 834, 838–39 (9th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). We therefore reject their due process challenge.[4]

## II.

Appellants Jilek and Bishop assert that the district court erred by not applying the dosage equivalency tables of Guideline section 2D1.1. The tables are to be used "in cases where the number of doses, but not the weight of the controlled substances, are known." U.S.S.G. § 2D1.1. We believe that this language makes the drug equivalency tables inapplicable here. The parties stipulated that the total weight of the drug impregnated blotter paper is 19.75 grams. Since we affirm the district court's ruling that the weight of the paper is properly included in the weight calculation as a "substance containing a detectable amount" of LSD, *see* 21 U.S.C. § 841(b)(1)(A)(v), the weight of the controlled substance is known and we need not refer to the tables.

Appellant McGuire makes a similar argument. He argues that the district court erred by estimating the weight of the dosage units of LSD not recovered by the government based on the weight of the lightest recovered unit rather than using the dosage equivalency table. We reject this argument. The Guidelines themselves indicate that the table is merely "to facilitate the application of § 2D1.1," *see* U.S.S.G. § 2D1.1, and do not mandate the use of the table. Furthermore, the unrecovered dosage units were virtually indistinguishable from the recovered dosage units since all 8,000 units were obtained at the same time from the same source. Thus,

the unrecovered dosage units would weigh at least as much as the lightest of the recovered dosage units. Accordingly, the court did not err in using the weight of the lightest recovered dosage unit to estimate the weight of the unrecovered units.

## III.

In conclusion, we believe that the district courts did not err in sentencing the appellants based on an offense level which included the weight of the blotter paper as well as the weight of the pure LSD. Accordingly, we affirm the sentences imposed by the district courts.

Furthermore, we reject the appellants' constitutional challenges based on the cruel and unusual punishment clause of the eighth amendment and the equal protection clause of the fourteenth amendment. These arguments merit no discussion. *See United States v. Mendoza,* 876 F.2d 639, 641 (8th Cir.1989); *Hoyt,* 879 F.2d at 512; *Whitehead,* 849 F.2d at 859–60; *Klein,* 860 F.2d at 1501; *Savinovich,* 845 F.2d at 839–40; *Holmes,* 838 F.2d at 1177–78.

**4.** We also reject appellants' argument that the statutory language is unconstitutionally vague because we believe that the statute defines "the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). "[T]he language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Jordan v. DeGeorge,* 341 U.S. 223, 231–32, 71 S.Ct. 703, 708, 95 L.Ed. 886 (1951).