**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kevin Morris ELROD,
Defendant–Appellant.**

No. 89–5368.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 6, 1989.

Decided March 2, 1990.

Joseph M. Whittle, U.S. Atty., Terry Cushing (argued), Louisville, Ky., for plaintiff-appellee.

Robert Bradley Coffman (argued), Coffman & Beck, Bowling Green, Ky., for defendant-appellant.

Before MERRITT, Chief Judge, WELLFORD, Circuit Judge and DeMASCIO, Senior District Judge.*

PER CURIAM.

Elrod was convicted upon his guilty plea to one count of conspiracy to possess with intent to distribute more than 10 grams (1,990 units) of lysergic acid diethylamide (LSD) in violation of 21 U.S.C. § 841(a)(1). Pursuant to a plea agreement, 8 additional counts, 4 of which were substantive counts charging possession with intent to distribute LSD, were dismissed. A chemist's report established that the total weight of the 1,990 units found in Elrod's possession was approximately 11 grams, of which .09 grams were pure LSD. The weight of the impregnated "blotter paper," the carrying medium for the LSD in Elrod's possession, was over 10 grams. The "blotter paper" referred to is not the type of paper used to absorb ink. Rather, it is considerably thinner, of the same consistency, and generally off-white in color. Most often, the blotter paper is perforated into 1 inch sections upon which approximately 25 micrograms (the amount of a normal dosage) of LSD are placed.[1] The impregnated square is sometimes ingested and at other times it is used to transfer the LSD for ingestion by other means. The district court totaled the weight of the pure LSD (.09 grams) and the weight of the "blotter paper" (over 10 grams) to arrive at the weight it used in computing the offense level of Elrod's crime after applicable adjustments.

Elrod contends that the district court improperly interpreted the word "substance" to include the weight of the impregnated blotter paper, as well as the weight of the LSD, to arrive at the relevant weight for sentencing purposes. The inclusion of the weight of the paper placed Elrod within the provisions of 21 U.S.C. § 841(b)(1)(A)(v) which penalizes offenses involving:

> 10 grams or more of a *mixture or substance containing a detectable amount* of lysergic acid diethylamide (LSD); (emphasis added).

Elrod argues that the word "substance" as used in this penalty statute is ambiguous, and under no circumstances can a carrier medium ever be included as a "substance" within the meaning of the statute. He urges us to define the word "substance" narrowly as a chemical compound to be consistent with three dictionary definitions.

■ In keeping with the other circuits that have considered this issue, we conclude that the total weight of "a mixture or substance containing a detectable amount of" LSD, not the amount of pure LSD, is the relevant weight for sentencing purposes. United States Sentencing Commission, *Guidelines Manual*, Ch. 2 Pt. D. (Nov. 1989); *United States v. Wright*, 873 F.2d 437 (1st Cir.1989); *United States v. Daly*, 883 F.2d 313 (4th Cir.1989); *United States v. Rose*, 881 F.2d 386 (7th Cir.1989); *United States v. Taylor*, 868 F.2d 125 (5th

---

* The Honorable Robert E. DeMascio, United States District Court for the Eastern District of Michigan, sitting by designation.

1. One gram of LSD equals 1,000,000 micrograms, the equivalent of 40,000 dosages.

Cir.1989); *United States v. McGeehan*, 824 F.2d 677, 681 (8th Cir.1987), *cert. denied* 484 U.S. 1061, 108 S.Ct. 1017, 98 L.Ed.2d 982 (1988). Accordingly, we affirm the sentence imposed by District Judge Ronald E. Meredith.

The plain language of the 1986 amendments to the penalty provision for drug distribution fully supports our conclusion that the weight of "the mixture or substance" containing LSD is includable in determining the relevant weight for sentencing purposes. The amendments clearly demonstrate that Congress was aware that various methods of measuring drug weights could be used to set penalties, such as the weight of the mixture or substance containing the drug (e.g., LSD), or the net weight of the drug itself, or both (e.g. phencyclidine). The phencyclidine provision, for example, penalizes offenses involving:

> 100 grams or more of phencyclidine (PCP) *or* 1 kilogram or more of a mixture or substance containing a detectable amount of phencyclidine (PCP). (Emphasis added.)

21 U.S.C. § 841(b)(1)(A)(iv). Hence, it is readily apparent that the PCP provision penalizes distribution in either pure form or as a mixture or substance that contains a detectable amount of the drug.

If Congress intended to penalize distribution based only upon the net weight of the LSD, as Elrod suggests, it could have easily drafted specific language to say so, as it did for PCP. But "Congress clearly knew how LSD was ingested" and used the language "mixture or substance containing a detectable amount" as a practical means of getting at distributors of 10 grams of LSD or more. *United States v. Marshall*, 706 F.Supp. 650, 653 (C.D.Ill.1989). Elrod's argument based on the cocaine provision in the amended statute is not persuasive. We do not find that provision's language inconsistent with the congressional intent made clear from the telling language evident in the more comparable PCP provision. We find no ambiguity that requires resort to legislative history or canons of construction.

In *McGeehan*, 824 F.2d 677, the court compared the former LSD statute and the 1986 amended statute. The former statute penalized "5 grams or more of LSD" which the court found to be only the weight of the pure LSD. The court concluded that the amending language of "10 grams or more of a mixture or substance containing a detectable amount" of LSD demonstrated congressional awareness of the difference between pure LSD and LSD combined with a carrier substance. *McGeehan*, 824 F.2d at 681. The former statute used identical language to fix the penalty for distribution of both PCP and LSD (penalties imposed for 500 grams or more of PCP and for 5 grams or more of LSD). Comparing this prior language with the language used in the amendments makes it clear that Elrod's interpretation would make the LSD amending language superfluous. Like the court in *McGeehan*, we conclude that Congress intentionally used "mixture or substance containing a detectable amount of" LSD to punish offenses involving 10 grams or more of LSD regardless of its purity.

Elrod argues that the 1986 amendments were meant to target only major drug offenders and not offenders in possession of only .09 grams of LSD or only 1,990 doses. Whether or not 1,990 doses of LSD are within the ambit of major drug trafficking, clearly, Congress intended to penalize drug dealers more severely in the 1986 amendment. Elrod is aware that Congress refused to define major drug trafficking by the number of doses or the quantity of the pure drug. Instead, Congress took a market-oriented approach in amending § 841. Congressional Record § 14270, Sept. 30, 1986. We cannot say that in a market-oriented approach, Elrod was unjustly included in the enhanced penalty provision of § 841. Elrod has been dealing in drugs since at least 1985 when he was first convicted. He committed this offense while still on probation. We are not persuaded by Elrod's contention that Congress intended to apply the enhanced penalties only to offenders dealing in 100,000 dosage units or more. *See United States v. Savinovich*, 845 F.2d 834, 839 (9th Cir.1988), *cert. de-*

*nied,* — U.S. —, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988).

■ Finally, Elrod argues that, by combining the weights, the enhanced penalty provision can be triggered by the choice of an innocent carrier medium. Thus, offenders may be punished differently based upon the carrier selected. This argument may have some appeal, but this potential result was not an oversight by Congress. It is clear to us that Congress intended to penalize offenders possessing 10 grams of LSD or more regardless of whether the 10 grams is made up of pure LSD or consists of a detectable amount of LSD combined with a carrier medium.

The judgment of the district court is affirmed.