UNITED STATES of America, Appellee,

v.

Matthew FOLLETT, Appellant.

No. 89–2386.

United States Court of Appeals, Eighth Circuit.

Submitted March 8, 1990.

Decided June 1, 1990.

Geena D. Cohen, Chicago, Ill., for appellant.

Lester A. Paff, Des Moines, Iowa, for appellee.

Before McMILLIAN and FAGG, Circuit Judges, and HEANEY, Senior Circuit Judge.

McMILLIAN, Circuit Judge.

Matthew Follett appeals from a final judgment entered in the District Court[1] for the Southern District of Iowa finding him guilty, following a guilty plea, of possession with intent to distribute 2,500 dosage units of LSD in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(v). The district court sentenced Follett to 84 months imprisonment, 4 years supervised release, a $20,000 fine, and a $50 special assessment, plus the costs of incarceration and supervised release. For reversal, Follett argues the district court erred in (1) refusing to depart downward from the applicable guideline sentencing range because of his psychological problems and diminished mental capacity, (2) finding that he was not a minor participant, (3) holding the sentencing guidelines are not unconstitutional, and (4) calculating the quantity of drugs involved in the offense. For the reasons discussed below, we affirm the judgment of the district court.

This case arose out of the related cases of William Emanuel and Michael McGuire, who were involved in the distribution of LSD in and around Iowa City, Iowa. After his arrest Emanuel, who was Follett's supplier, called Follett to discuss a drug transaction. Follett told Emanuel that he had sold 20 sheets of LSD in 7 days and had customers waiting for approximately 15–30 sheets of LSD. Emanuel told Follett that he did not want to "touch anything" because of his arrest. Follett agreed to deal directly with Emanuel's supplier in California. Follett was unable to complete the transaction because the California supplier refused to make any sales involving Emanuel following Emanuel's arrest. Although no controlled purchase was ever made from Follett, Emanuel testified to a grand jury that he had sold Follett approximately 2,500 dosage units of LSD.

Follett was initially charged with possession with intent to distribute in excess of 10 grams of LSD in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(v), and conspiracy to distribute LSD in violation of 21 U.S.C. § 846. Following plea negotiations, Follett was charged by information with possession with intent to distribute 2,500 dosage units of LSD in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(v). Follett entered a guilty plea. The plea agreement stipulated that, subject to Follett's objection to including the weight of the carrier paper to determine the total quantity of the drug involved, that Follett possessed in excess of 1

---

1. The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

gram of a mixture or substance containing LSD, that he could have reasonably foreseen a total quantity of 7 to 9.9 grams of LSD, and that he had accepted responsibility. At the sentencing hearing, Follett presented evidence establishing that he has a history of psychological problems.

The district court found that the base offense level, based upon the quantity of LSD involved in the offense, which included the weight of the carrier paper, was 30, pursuant to Guidelines § 2D1.1(a)(3), and then subtracted 2 points for acceptance of responsibility. The district court refused a 2 point reduction for minor participant status, Guidelines § 3B1.2, and refused to depart downward on the basis of diminished mental capacity, Guidelines § 5K2.13. The applicable guideline sentencing range at an adjusted offense level of 28 and criminal history category I is 78–97 months. The district court sentenced Follett to 84 months imprisonment, 4 years supervised release, a $20,000 fine, and a $50 special assessment, plus the costs of incarceration and supervised release. This appeal followed.

■ Follett first argues the district court erred in refusing to depart downward on the basis of his psychological problems and diminished mental capacity. The district court's refusal to depart downward is not reviewable on appeal. *United States v. Evidente*, 894 F.2d 1000, 1004 (8th Cir. 1990).

■ Follett next argues the district court erred in failing to find that he was a minor participant pursuant to Guidelines § 3B1.2 and thus entitled to a 2 point reduction in the offense level. The district court's finding that Follett was not a minor participant is a finding of fact subject to review under the clearly erroneous standard. *See, e.g., United States v. Ellis*, 890 F.2d 1040, 1041 (8th Cir.1989) (per curiam). The record adequately supports the district court's finding that Follett was not a minor participant. The district court's finding is not clearly erroneous.

Follett next argues that the sentencing guidelines are unconstitutional on several grounds. This court has upheld the sentencing guidelines against challenges on each ground Follett raises. *See United States v. Barnerd*, 887 F.2d 841, 842 (8th Cir.1989) (per curiam) (guidelines do not unconstitutionally limit defendant's right to present evidence); *United States v. Lane*, 883 F.2d 56, 57 (8th Cir.1989) (per curiam) (guidelines not unconstitutionally mechanical); *United States v. Nunley*, 873 F.2d 182, 186 (8th Cir.1989) (no constitutional right to individualized sentence in non-capital cases).

■ Finally, Follett argues that the district court should not have included the weight of the carrier paper in determining the quantity of LSD. This argument was rejected in *United States v. Bishop*, 894 F.2d 981, 985–86 (8th Cir.1990) (weight of distribution medium should be included in weight calculation).

Accordingly, the judgment of the district court is affirmed.

HEANEY, Senior Circuit Judge, dissenting.

I would remand this matter to the district court for resentencing because the sentence imposed is at once too severe and too lenient: too severe because it requires Follett to be confined for at least 74 months [1]—an inordinately long sentence for a 19–year–old first offender—and too lenient because it suggests that he be permitted to serve that time in a minimum security institution. Unfortunately, minimum security institutions have neither the personnel nor the facilities necessary to deal with individuals, like Follett, who have severe mental problems.

On the basis of the record that was submitted at the sentencing hearing, Follett suffers "from a severe mental disorder—being close to psychosis—major depression, 296.3, with a mixed personality disorder, 301.89, with narcissistic, passive aggressive, and impulsive features." The record further indicates that Follett has abused

1. A comparable pre-Guidelines sentence would have been between five and forty years.

alcohol and drugs since the age of 12 and has refused to undergo treatment to improve his condition. He has been in and out of psychotherapy throughout his life. The psychiatrist retained by the Follett family states:

His mental status examination revealed a superficiality in his understanding and insights. There were no cognitive deficiencies in his ability to calculate, in his fund of knowledge, in his orientation or in his memory. His I.Q. appeared a bit above average from this clinical exam. He showed no insights whatsoever into the nature of any conflicts....

... He maintains only superficial emotional interests in people, situations, events, and even with his family. Thus he protects himself against chaotic, regressive and psychotic state of mind.

... [I]t has been extremely difficult for him to invest himself in a therapeutic relationship, be it in group or individual therapy. He simply appears to be, at the present time at least, incapable of withstanding the give and take at a deeper emotion level with individuals whom he basically regards with mistrust and suspicion and feels terrified by their presence.... [He appears to be] "a friend to everyone" but really a friend with nobody. Relationships are therefore superficial. He cannot make a commitment.

.    .    .    .    .

Although intellectually he can understand somewhat of the nature of his problems, at an emotional level there is almost nothing at present he can do about it.

.    .    .    .    .

... [H]e entered Northwestern Memorial Hospital in 1986 because of poor school performance and impulsive self-injurious behavior—slashing a tendon in his wrist when he punched out several windows in his home after arguments with his father and his girl friend....

.    .    .    .    .

Psychological testing further revealed his self-image was inferior, humiliated and he felt revengeful.

.    .    .    .    .

Psycho-educational testing on 5-25-82, which was an evaluation by several school officials, also indicated that he displayed anxious, impulsive, distractable, hyperactive behavior throughout the interview and testing session. He was clearly described as being a classical hyperactive person who needed medication and indeed was prescribed Ritalin.... He was evaluated even back then as impulsive socially, emotionally immature, and appeared to be over-compensating for feelings of depression by acting at ease and blissful.

Referring to this background, we see an individual who reached out for alcohol and on occasion, street drugs to anesthetize his brain so that he could survive.... His miserable level of functioning both academically and socially and for that matter with his parents substantiates these notions. At the time of the crime it is my carefully considered opinion that he was suffering from a severe mental disorder—being close to psychosis—major depression, 296.3, with a mixed personality disorder, 301.89, with narcissistic, passive aggressive, and impulsive features.

The psychiatrist concluded by recommending that Follett be subjected to "a mandatory treatment program with sufficient psychotropic medication to allow him to contain his regressed, primitive impulses long enough to achieve a corrective emotional experience with insights at an emotional level, and therefore to function in a more reasonable adult manner. Such a program should be measured in years...." The government presented no medical testimony at the sentencing hearing.

While I have great respect for the district court, I do not believe that the Sentencing Guidelines permit a judge to substitute its judgment as to mental condition for that of medical experts, absent a basis in the record for so doing.

I would therefore remand the matter and instruct the district court to consider fully Follett's medical disorders, to permit the government to present any testimony that it sees fit, and to resentence on the basis of the full record.

It is clear that the prison authorities cannot require Follett to take medication unless that refusal constitutes a danger to himself or others in the environment in which he is confined. *See Washington v. Harper,* —— U.S. ——, 110 S.Ct. 1028, 1039–40, 108 L.Ed.2d 178 (1990). They can, however, place him in a facility where psychiatric treatment and counselling are available permitting Follett the opportunity to take advantage of medical treatment to improve his ability to function within society.

I, of course, have no objection to a lengthy period of controlled supervision after he is released, conditioned upon his refraining from the use of alcohol and drugs and continuing in a medically recommended program of psychiatric treatment.

Finally, I recognize the limitations that the Guidelines place on all of us, but district courts must exercise their obligation to depart from the Guidelines when the circumstances warrant such a departure. Otherwise, we will have a completely mechanized sentencing process that will not accomplish any of the goals established by Congress in adopting the Guidelines and substitute blind acquiescence and injustice for discretion and justice. Here, a departure will serve the interests of society and the defendant better than the sentence imposed.