UNITED STATES of America, Appellee,

v.

Keith WILLIAMS, Appellant.

No. 88–1375.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1989.
Decided March 5, 1990.

Steven Feldman, Hauppage, N.Y., for appellant.

Richard L. Poehling, St. Louis, Mo., for appellee.

Before JOHN R. GIBSON, WOLLMAN and BEAM, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Keith Williams was convicted[1] of illegal possession of a firearm by a convicted felon[2] in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(1)(B) (1988), and was sentenced to a prison term of four years. We affirm the conviction.

On the afternoon of April 25, 1987, St. Louis Police Officer John McKenzie, on patrol in his marked police car, observed a white Oldsmobile exceeding the posted speed limit traveling east on Page Boulevard. Officer McKenzie paced the Oldsmobile until the occupants of the car noticed him and turned into a gasoline service station located on the southwest corner of the intersection of Page and Grand Boulevards. Officer McKenzie drove his car to a vantage point, on the northwest corner of the intersection, with a clear view of the Oldsmobile. From this position he saw the driver, later identified as Willie Young, pumping gas, and the passenger, later identified as Williams, paying for the gas and carefully surveying the area as he walked back to the car. Once Williams returned to the car he reached through the open passenger door, removed a black pouch, pulled a handgun out of his waistband, placed it in the pouch, and put the pouch into the glove box area of the car.

Young and Williams then re-entered the car and proceeded south on Grand Boulevard. Officer McKenzie followed, pulled over the Oldsmobile, called radio dispatch, and then approached the car. He first asked Young to step out and then requested his operator's license. When Young responded that he did not have a license, Officer McKenzie informed him that he was under arrest for speeding and not having an operator's license. Officer McKenzie then told the men that he had been observing the car and that he intended to search it. Young was frisked and told to stand at the rear of the car. Williams was then ordered out of the car and also frisked. Officer McKenzie then placed Williams under arrest for possession of a gun and advised him of his rights to remain silent and to be represented by an attorney.

Officer McKenzie then searched the car, and, upon finding the glove box locked, asked both Young and Williams for the key. Both men denied having the key, but Officer McKenzie, after conducting additional searches, located it hidden in one of Williams' shoes. A search of the glove box yielded a zippered black pouch containing a loaded .38 caliber Smith and Wesson revolver and $2,740 in United States currency.

Williams was taken to the police station and again advised of his rights to remain silent and to have an attorney present. After indicating that he understood his rights, Williams told Officer McKenzie that he was accompanying Young as a bodyguard and that they had been on their way to purchase narcotics. Williams denied, however, owning or possessing the gun.

Williams was charged with carrying a concealed weapon in violation of 18 U.S.C. sections 922(g)(1) and 924(a)(1)(B), tried, and convicted. This appeal followed.

I.

Williams argues initially that the government failed to prove his guilt beyond a reasonable doubt based on Officer McKenzie's testimony. Williams argues that if the officer had actually seen him conceal a weapon, McKenzie would have informed dispatch that he needed backup for a suspect carrying a concealed weapon

---

1. Williams was tried before the Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

2. Williams has four previous felony convictions. (Tr. 85–86).

when he initially radioed in at 3:28 p.m. Williams argues that McKenzie waited some twenty minutes after he had stopped the car before calling for an assist car and that this delay indicates that McKenzie did not know that a gun was in the car until he found it. Williams also argues that McKenzie's own testimony shows that he approached the stopped car with his sidearm holstered when he asked for Young's license and informed Young that he was under arrest for a traffic violation. Finally, Williams maintains that he was never personally linked to the gun and ammunition, and that the gun and the money actually belonged to Young.

When reviewing the sufficiency of the evidence to support a jury verdict finding the defendant guilty, "it is well established that the evidence is to be viewed in the light most favorable to the verdict; the evidentiary conflicts are resolved in favor of the government; and we must sustain the verdict if supported by substantial evidence." *United States v. Eisenberg*, 807 F.2d 1446, 1456 (8th Cir.1986); *see also Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Long Elk*, 805 F.2d 826, 829 (8th Cir.1986). We note that "the government's burden on a particular element of the offense may be satisfied by circumstantial evidence as long as it is sufficient to prove that element beyond a reasonable doubt." *United States v. Blackman*, 897 F.2d 309, 317 (8th Cir.1990). Further, "[i]t is the function of the jury, not an appellate court, to resolve conflicting testimony or judge the credibility of the witnesses." *Eisenberg*, 807 F.2d at 1456; *see also Smalley v. United States*, 798 F.2d 1182, 1186 (8th Cir.1986). Accordingly, we "will reverse only if we conclude that a reasonable fact-finder could not have found guilt beyond a reasonable doubt." *United States v. Gooden*, 892 F.2d 725, 729 (8th Cir.1989).

The evidence shows that Officer McKenzie observed the commission of a traffic offense and before he could stop the vehicle, it pulled into a gasoline service station. At the service station he saw Williams remove a gun from his waistband, put it in a black pouch, and place the pouch in the glove box area of the car. After the car left the service station, the officer stopped it and arrested Young for a traffic offense and driving without an operator's license and arrested Williams on a weapons violation. During his search of the subjects, he found the key to the glove box on Williams. A search of the glove box produced a black pouch containing a loaded .38 caliber revolver.

We are satisfied that on the evidence presented a reasonable fact-finder could have found Williams guilty beyond a reasonable doubt. We recognize that there are conflicts between the testimony by Officer McKenzie and Williams, and questions concerning when the officer requested the assist car. It was for the jury, however, to resolve these differences. *See Glasser*, 315 U.S. at 80, 62 S.Ct. at 469; *Smalley*, 798 F.2d at 1188.

## II.

Williams next argues that he was improperly questioned by the prosecutor during cross-examination and that the judge also acted improperly by not issuing curative instructions. He advances two specific instances of impropriety.

### A.

Williams first argues that the prosecutor improperly forced him to call the police witnesses "liars" in order to maintain his own innocence. On cross-examination, the prosecutor asked Williams the following question:

Q. [Y]ou made the statement basically denying the gun but claiming that you were with Mr. Young and you were acting as a bodyguard, that you were going to go with him, that he was going to purchase some narcotics; that was the officer's testimony and also Officer Womack's testimony; and you're telling us under oath you did not make that—*no, that's not fair.* You're telling us you made part of the statement.

You say you denied having anything to do with the gun; is that correct?

A. Yes, sir.

(Tr. 148) (emphasis added). Williams claims that this question forced him to impliedly call the police officers "liars" in order to defend his innocence, and that this in turn implied that the prosecutor was calling him a liar. He argues that placing him in that situation was improper, citing *United States v. Peyro*, 786 F.2d 826, 831 (8th Cir.1986). Williams contends that the question was also unfair because it allowed the prosecutor to sit as the "thirteenth juror." Further, Williams maintains that the prosecutor's comment on the fairness of the question, "no, that's not fair" (Tr. 148), did not cure it because the question was not stricken from the record, and its inference remained because no curative instruction was issued.

On direct examination, Williams chose to testify concerning the statements he made to Officer McKenzie. (Tr. 131–34). This decision opened up this area for cross-examination. During cross-examination, the prosecutor was simply attempting to clarify Williams' position on these statements. Williams did not object when the question at issue was asked and we may reverse only for plain error on appeal. *United States v. Meeks*, 857 F.2d 1201, 1203 (8th Cir.1988). We have no hesitation in determining that there was no plain error present here, moreover, we are satisfied that there was no abuse of discretion and no showing of prejudice. *United States v. Lee*, 743 F.2d 1240, 1249 (8th Cir.1984).

### B.

■ Next, Williams contends that by questioning him about drugs, the prosecution introduced evidence of prior, uncharged crimes. During the prosecutor's cross-examination of Williams, he asked him the following question:

Q. Are you familiar with drugs generally?

A. I didn't understand what you're saying.

Q. Are you familiar with drugs such as—[*Objection overruled*].

A. I don't use drugs.

(Tr. 148–49). Williams contends that this question was irrelevant to the crime with which he was charged.

Further, Williams argues that the damage done by the prosecutor's question was exacerbated by a question from the bench. After Williams' attorney objected to the prosecutor's question, the judge overruled the objection and asked Williams the following question:

Q. You know what drugs are?

A. Yes, sir.

Q. Okay.

(Tr. 149). Williams maintains that these questions caused the jury to infer that Williams' general knowledge of drugs made it more likely than not that he had a criminal disposition to commit the crime in question.

Additionally, he argues that the inference that he was involved in the sale of narcotics, and that the gun was simply a tool of the trade, was further enhanced by the following question:

Q. Twenty-seven hundred forty dollars United States currency, that could purchase an ounce and a half of cocaine; could it not? [*Objection sustained*].

(Tr. 149).

Finally, Williams argues that these three questions concerning drugs served to raise the spectre of uncharged crimes, which are generally inadmissible, under Federal Rule of Evidence 404, to show that he had the propensity to commit the crime with which he had been charged.

We give substantial deference to the district court's determination in balancing the prejudicial effect of evidence of other crimes against its probative value. *United States v. Boykin*, 679 F.2d 1240, 1244 (8th Cir.1982). In the government's case-in-chief, there was evidence that the defendant made a statement that he and the driver were en route to pick up some drugs and that his function was that of a bodyguard. (Tr. 24, 72). Therefore, we again conclude that Williams has failed to establish that the trial court abused its discre-

tion by not striking the questions and issuing curative instructions, and we see no prejudice in this line of questioning. *See Lee,* 743 F.2d at 1249.

### III.

■ Williams also argues that the trial court erred when it failed to grant his counsel's motion for a mistrial after a uniformed United States Marshal stood next to him when he took the witness stand. At trial, Williams' attorney objected to the presence of the marshal and moved for a mistrial. The judge denied the motion, noting that the marshal was "near an exit door" and that he had seen this happen "hundreds of times" without objection. (Tr. 117). Williams maintains that the presence of the marshal unduly prejudiced him in the jurors' eyes and therefore the trial court should have granted his counsel's motion for a mistrial.

Decisions regarding security needs in the courtroom are squarely within the discretion of the trial court. *United States v. Gambina,* 564 F.2d 22, 24 (8th Cir.1977). Further, the burden of affirmatively demonstrating prejudice from security measures is on the defendant. *United States v. Robinson,* 645 F.2d 616, 617 (8th Cir. 1981). Where the marshal was standing and whether he was in uniform are disputed, but these issues are irrelevant. Even if the marshal was in uniform and standing next to Williams, the district court, in ruling on the defendant's motion for mistrial, found no prejudice. Our review of the record and Williams' arguments have not convinced us that this ruling was in error.

### IV.

■ Williams next argues that he was denied effective assistance of counsel at his trial. Ordinarily we do not consider ineffective assistance of counsel arguments in direct appeals. *United States v. DePuew,* 889 F.2d 791, 792–93 (8th Cir.1989); *United States v. Gallegos–Torres,* 841 F.2d 240, 242–43 (8th Cir.1988). Here, however, since the record was fully developed at a post-trial hearing, we will consider the argument. Williams asserts that Willie Young, the driver of the car in which he was stopped, could have given exculpatory testimony if he had been called as a witness. Williams' attorney, Lee Lawless, and Lawless' investigator, Thomas Hinton, both testified at Williams' post-trial hearing that they knew about Young prior to trial and that they had tried to secure his attendance at the proceedings. Williams, however, argues that neither Hinton nor Lawless served the signed judicial subpoena requesting the presence of Young, and that they did not request the court to dispatch a United States Marshal to locate Young. At Williams' post-trial hearing, Young testified that he was in St. Louis the entire time, had been reporting to a nearby court every five weeks, and could have been easily located.

The standard for reviewing ineffective assistance of counsel claims was set out by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on such a claim Williams must show that his counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on to produce a just result. *Id.* at 686, 104 S.Ct. at 2063–64. First, Williams must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. at 2064.

Following his conviction, Williams filed a Motion For New Trial in which his counsel's failure to call Young was addressed, and the district court conducted an evidentiary hearing on that issue. This hearing established that Williams, after his arrest, had met with Young two to four times, and that in those meetings Young had refused to talk with Williams about the circumstances of his arrest. Later, Young told Williams he would testify, but he would not reveal the contents of his testimony. Williams conveyed all this information to his trial counsel, Lawless. Williams understood that Young would contact Lawless

concerning appearing at his trial. (Post–Trial Hearing Tr. 39–40). Lawless was not contacted by Young, and attempted to locate him. Young was not at the address he listed on the police report from Williams' arrest. Further, Lawless, through his investigator Hinton, was unable to ascertain the whereabouts of Daisy Fisher, the registered owner of the car involved in Williams' arrest. Because of these facts, Lawless testified he did not feel that Young would be available as a witness and therefore he considered Williams' case ready to proceed to trial. (Post–Trial Hearing Tr. 44–46).

Following the evidentiary hearing, the court issued a written memorandum noting that Young's testimony was primarily directed at impeaching Officer McKenzie's testimony, and that it was therefore merely duplicative of Williams' trial testimony. Furthermore, the court noted that inconsistencies between the stories proffered by Young and Williams made Young's testimony inherently suspect. Accordingly, the court concluded that it was improbable and unlikely that Young's testimony would have produced an acquittal at trial, 698 F.Supp. 796.

In light of the findings of the district court, and after carefully considering the impact of Young's testimony, we conclude that Williams has failed to establish either element of the *Strickland* test.

### V.

Finally, Williams argues that he was arrested without probable cause and therefore that the evidence seized incident to his arrest should be suppressed. "An appellate court reviews the trial court's finding of probable cause to make a warrantless arrest under the clearly erroneous standard." *United States v. Houston*, 892 F.2d 696, 701 (8th Cir.1989). Probable cause exists where the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a prudent person in believing that the sus-

pect had committed or was committing an offense. *United States v. Purham*, 725 F.2d 450, 455 (8th Cir.1984). *See United States v. Wajda*, 810 F.2d 754, 758 (8th Cir.), *cert. denied*, 481 U.S. 1040, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987). At the initial evidentiary hearing in this case, Officer McKenzie testified as to the events leading up to his arrest of Williams, and the magistrate[3] found his testimony credible and probable cause present. We do not believe that this finding was clearly erroneous. Officer McKenzie saw Williams take a handgun from his waistband, place it in a black pouch, and put the pouch in the car in which he was riding. These facts clearly establish that Officer McKenzie had probable cause to arrest Williams. Therefore, we conclude that the evidence seized incident to Williams' arrest was properly admitted in the trial court.

### VI.

Accordingly, we affirm the conviction of the district court.

---

**3.** The Honorable Carol E. Jackson, United States Magistrate for the Eastern District of Missouri.