UNITED STATES of America, Appellee,

v.

Charles Lester MURPHY, Appellant.

No. 89–1700.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 15, 1989.

Decided March 27, 1990.

James W. Hall, Cedar Rapids, Iowa, for appellant.

Richard L. Murphy, Cedar Rapids, Iowa, for appellee.

Before McMILLIAN, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Charles Lester Murphy pleaded guilty to distribution of methamphetamine, 21 U.S.C. § 841(a)(1) (1988); aiding and abetting the distribution of methamphetamine, 18 U.S.C.

§ 2 (1988); and conspiracy to distribute and to possess with intent to distribute cocaine and methamphetamine, 21 U.S.C. § 846 (1982). The aiding and abetting offense occurred prior to the effective date of the Sentencing Guidelines; the other two offenses are governed by the penalty provisions of the Guidelines. Murphy received three concurrently running sentences, the longest of which is 304 months. Murphy raises a number of issues challenging his convictions and sentences. These are: (1) he received ineffective assistance of counsel in connection with his guilty plea and sentencing in violation of the Sixth Amendment of the Constitution; (2) his guilty plea was not voluntarily and knowingly made; (3) the government did not comply with the plea agreement; (4) the District Court[1] did not comply with Rule 11(f) of the Federal Rules of Criminal Procedure in taking his guilty plea; (5) the Sentencing Guidelines are unconstitutional; (6) the District Court incorrectly applied the Sentencing Guidelines; (7) the District Court did not comply with Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure; and (8) the sentence imposed constitutes cruel and unusual punishment in violation of the Eighth Amendment. We affirm the judgment of the District Court.

■■■ At the outset, we conclude that Murphy's first three claims may not be raised at this point by direct appeal. "Claims of ineffective assistance of counsel normally are raised for the first time in collateral proceedings under 28 U.S.C. § 2255.... This is so because normally such a claim cannot be advanced without the development of facts outside the original record." *United States v. Gallegos–Torres,* 841 F.2d 240, 242–43 (8th Cir.1988) (*quoting United States v. Dubray,* 727 F.2d 771, 772 (8th Cir.1984) (citation omitted)). *See also United States v. Mims,* 440 F.2d 643 (8th Cir.1971) (per curiam). Similarly, the claims that a guilty plea was involuntary and that a plea bargain was not kept are issues that first must be presented to the district court and are not

cognizable on direct appeal. *United States v. Ulland,* 638 F.2d 1150 (8th Cir.1981) (per curiam); *see also Mims,* 440 F.2d 643.

■■ Murphy contends that the District Court violated Rule 11(f) of the Federal Rules of Criminal Procedure by failing to determine whether there was a sufficient factual basis for Murphy's plea of guilty to the conspiracy charge. After reviewing the guilty plea proceeding, we find full compliance with Rule 11(f).

At the guilty plea hearing, the District Court heard testimony from Murphy regarding the conspiracy to distribute methamphetamine. Murphy admitted that between an uncertain date in 1985 and November 1988, the dates of the conspiracy charged in the indictment, he sold approximately five to six pounds of methamphetamine. Transcript of Guilty Plea Hearing at 45–46. Murphy described several drug transactions in which he supplied large quantities of methamphetamine to regular customers with full knowledge that these individuals then resold the drug to other purchasers. *Id.* at 38–45, At the hearing, the government summarized its evidence in some detail and outlined the anticipated testimony of numerous witnesses who knew of Murphy's activities as a methamphetamine dealer. *Id.* at 47–58. There was clearly a sufficient factual basis for the District Court to accept Murphy's plea of guilty to the conspiracy charge and we find that the court fully complied with Rule 11(f).

Murphy claims that the Sentencing Guidelines violate the Due Process Clause of the Fourteenth Amendment because they (1) allow the District Court to rely on facts not proven beyond a reasonable doubt when imposing sentence; and (2) fail to consider the purity of the drugs involved in calculating sentence. These claims have no merit.

■■■ The Due Process Clause does not require a particular standard of proof for factual determinations at sentencing hear-

---

**1.** The Honorable David R. Hansen, United States District Judge for the Northern District of Iowa.

ings. *See McMillan v. Pennsylvania,* 477 U.S. 79, 91, 106 S.Ct. 2411, 2419, 91 L.Ed.2d 67 (1986) ("Sentencing courts have traditionally heard evidence and found facts without any prescribed burden at all."). This Court recently has held that facts proved by a preponderance of the evidence may be used to calculate a defendant's sentence under the Guidelines. *United States v. Gooden,* 892 F.2d 725, 728 (8th Cir.1989). We also have suggested, in keeping with *McMillan,* that it may not be incumbent upon a district court to employ any particular standard of proof when finding facts at a Guidelines sentencing hearing. *United States v. Ehret,* 885 F.2d 441, 444 (8th Cir.1989) (affirming sentence based on facts proved by clear and convincing evidence), *cert. denied,* — U.S. —, 110 S.Ct. 879, 107 L.Ed.2d 962 (1990). In the instant case, the District Court found that the facts relied on in imposing the sentence—specifically, the quantity of drugs involved, the use of a firearm in the commission of the offenses, and Murphy's leadership role in the operation—were proved by clear and convincing evidence. In light of our holding in *Gooden,* as well as our suggestion in *Ehret,* this standard of proof is more favorable to the defendant than our cases require, and Murphy's challenge to his sentence on this ground cannot succeed.

■ Murphy asserts that the Guidelines also violate due process because they require a defendant's offense level to be calculated without regard to the purity of the drug involved. The footnote to the Drug Quantity Table specifically states:

> Consistent with the provisions of the Anti–Drug Abuse Act, if any mixture of a compound contains any detectable amount of a controlled substance, the entire amount of the mixture or compound shall be considered in measuring the quantity.

United States Sentencing Commission, *Guidelines Manual,* App. C, amend. 125 (Nov.1989). Due process is satisfied if the

statute or regulation in question bears a "reasonable relation to a proper legislative purpose" and is "neither arbitrary nor discriminatory." *United States v. Bishop,* 894 F.2d 981, 986 (8th Cir.1990) (quoting *Nebbia v. New York,* 291 U.S. 502, 537, 54 S.Ct. 505, 516, 78 L.Ed. 940 (1934)). This Court recently has held that a statute basing penalties on the total weight of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD) rather than solely on the weight of the pure LSD involved, does not violate due process. *Bishop,* 894 F.2d at 986–87. We agreed with the other circuit courts that have "concluded that basing sentencing on the quantity of drugs without regard to purity is reasonably related to the proper legislative purpose of penalizing large volume drug traffickers more harshly." *Id.* The Sentencing Commission's decision to determine a defendant's offense level on the basis of the entire weight of the methamphetamine mixture involved satisfies due process.

Murphy further argues that the Sentencing Guidelines are unconstitutional because they violate the presentment clause. This challenge to the Guidelines was rejected by this Court in *United States v. Barnerd,* 887 F.2d 841, 842 (8th Cir.1989) (per curiam). *See also United States v. White,* 890 F.2d 1012, 1013 (8th Cir.1989). Murphy's presentment clause claim therefore must fail.

Murphy contends that the District Court erred in making the factual determinations involved in sentencing concerning the quantity of the drugs involved; the presence of a firearm; Murphy's role in the offense; and Murphy's criminal history.[2] Our review of these factual findings is governed by statute, and we "shall accept the findings of fact by the district court unless they are clearly erroneous." 18 U.S.C. § 3742(d) (1982 & Supp. IV 1987).

■ The Guidelines state:

> If a defendant is convicted of conspiracy, the sentence should be imposed only on

---

**2.** Murphy also contends that the District Court's finding that he was a career offender under § 4B1.1 was incorrect. Because the District

Court did not rely on this determination in sentencing Murphy, we will not address this issue.

the basis of the defendant's conduct or the conduct of co-conspirators in furtherance of the conspiracy that was known to the defendant or was reasonably foreseeable.

U.S.S.G. § 2D1.4 comment. (n. 1) & App.C. amend. 137. The District Court found that Murphy distributed 94 ounces of methamphetamine and 13.5 ounces of cocaine, corresponding to an offense level of 32, during the course of the conspiracy to which he pleaded guilty. This finding was based on the testimony of government agents, who interviewed Murphy pursuant to his plea agreement to cooperate with the government, and on the admissions of Murphy himself at the guilty plea hearing. There is substantial evidence that Murphy distributed the amount of methamphetamine and cocaine used to calculate his base offense level; we cannot say that the District Court's findings concerning drug quantity were clearly erroneous.

■ Murphy's offense level was increased two levels for possession of a firearm during the commission of the drug trafficking offense. U.S.S.G. § 2D1.1(b)(1). The Commentary to this provision states, "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 comment. (n. 3). It is undisputed that Murphy owned a firearm during the dates of the conspiracy. Murphy admitted that he occasionally carried the weapon but claimed that he did so because of death threats from a local motorcycle gang. Murphy argues that because he was not carrying the weapon during either of the drug transactions of which he was convicted or at the time of his arrest, it is "clearly improbable" that the weapon was involved in the drug conspiracy. We disagree. The District Court heard testimony from two witnesses who had seen Murphy with a firearm during specific drug transactions. These witnesses also testified that Murphy was generally known to be an armed methamphetamine dealer. As the District Court noted, the enhancement provision "recognizes the increased danger of violence when people involved in drug deals are merely carrying weapons for whatever their personal purpose might be." Transcript of Sentencing Hearing at 46. There was considerable evidence that Murphy had a firearm on his person or at his side during some of his drug transactions and the District Court's finding that it was not "clearly improbable" that the weapon was connected with the conspiracy to which he pleaded guilty is not clearly erroneous.

■ The District Court increased Murphy's offense level by three levels after finding that he "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). Several government agents testified regarding the size of the drug distribution network and Murphy's supervisory role within the operation. One agent described Murphy as "the largest supplier of methamphetamine" in the Waterloo–Cedar Falls area. Transcript of Sentencing Hearing at 59. We have no difficulty concluding that the District Court's finding that Murphy was a manager or supervisor within an extensive drug trafficking operation is not clearly erroneous.

Murphy next contends that the District Court erred in figuring his criminal history score as a level six. See U.S.S.G. §§ 4A1.1, 4A1.2. Murphy's trial counsel, however, conceded at the sentencing hearing that Murphy's criminal history score was at least thirteen, thus placing Murphy within the range for a level six increase for his offense level (the government argued that the correct criminal history score was 16). Transcript of Sentencing Hearing at 67. Our review of the record convinces us that the District Court correctly placed Murphy in the level six criminal history category and on that basis properly determined the applicable Guideline range for Murphy's sentence.

■ In his final challenge to the District Court's application of the Guidelines, Murphy asserts that the court's failure to depart downward from the applicable Guideline range was improper. We recently have held that the exercise of discretion

by a district court to refuse to depart downward is nonreviewable by this Court. *See United States v. Evidente*, 894 F.2d 1000, 1003 (8th Cir.1990). Here the District Court so exercised its discretion and Murphy's claim affords him no basis for appellate relief.

Murphy argues that the District Court did not comply with Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure, which requires the court to make findings regarding any alleged factual inaccuracies contained in the presentence investigation report or, in the alternative, to announce that the contested facts will not be taken into account during sentencing. Fed.R. Crim.P. 32(c)(3)(D). Murphy fails to specify which factual matters were not resolved by the District Court at the time of sentencing. Moreover, in light of his challenges to the District Court's detailed factual findings, which we have discussed earlier in this opinion, we find it somewhat startling that Murphy even raises this issue. Our review of the record leaves us with no doubt that the District Court fully complied with the requirements of Rule 32(c)(3)(D).

Finally, Murphy contends that the three concurrent sentences he received, the longest being approximately twenty-five years, constitute cruel and unusual punishment in violation of the Eighth Amendment. As support for this contention, Murphy argues that because he is now forty years old, his sentence amounts to a virtual life sentence without possibility of parole. This argument is totally without merit. "A sentence within statutory limits is generally not subject to review" under the Eighth Amendment and this Court will "not substitute its judgment for the discretion committed to the district court." *United States v. Boone*, 869 F.2d 1089, 1092–93 (8th Cir.), *cert. denied,* — U.S. ——, 110 S.Ct. 81, 107 L.Ed.2d 47 (1989) and cases cited therein. The sentence the District Court imposed on each count of conviction is within the statutory maximum and within the appropriate Guideline range. Murphy's present age is irrelevant to the validity of his sentences under the Eighth Amendment. Although the sentences are stringent, we hold that they do not violate the constitutional prohibition against cruel and unusual punishment.

Finding no merit in any of Murphy's attacks on either his convictions or his sentences, we affirm the judgment of the District Court.