955 F.2d 45
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Charlie BROWN (90-2233), Joseph Cox (90-2234), Donald Fogell
(90-2265), and Carl Brown (90-2266), Defendants-Appellants.
 Nos. 90-2233, 90-2234, 90-2265, 90-2266.
 United States Court of Appeals, Sixth Circuit.
 Feb. 13, 1992.
 
 Before KEITH and DAVID A. NELSON, Circuit Judges, and HOOD, District Judge.*
 PER CURIAM.
 
 
 1
 Found guilty of conspiracy to distribute prescription drugs illegally, the defendants appeal their convictions and sentences. These cases are related to No. 90-2264, United States v. Rameshbhai F. Patel, M.D., where a separate opinion has been issued.
 
 
 2
 Among the issues raised in the instant appeals are questions involving the sufficiency of the evidence, misjoinder, and the proper application of the United States Sentencing Guidelines. We find none of the assignments of error persuasive, and we shall affirm the judgments entered by the district court.
 
 
 3
 * Dr. Patel carried on a medical practice in Flint, Michigan, from 1983 through 1988. As explained in our opinion in No. 90-2264, the practice was conducted as a prescription mill.
 
 
 4
 Dr. Patel and defendants Donald Fogell, Charlie Brown, Joseph Cox, and Carl Brown were indicted in September of 1988 on conspiracy charges. A 78-count superseding indictment was issued several months later. Count 1 charged all of the defendants with conspiracy to distribute Schedule II-V controlled substances outside the usual course of medical practice and for no legitimate medical purpose, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Counts 2 through 78 related solely to Dr. Patel; they involved criminal forfeiture of the doctor's automobile under 21 U.S.C. § 853 and violations of the mail fraud statute, 18 U.S.C. § 1341, in connection with the operation of the prescription mill.
 
 
 5
 Evidence introduced at trial indicated that substantially all of Dr. Patel's patients had their prescriptions filled at the Beecher Pharmacy, a business owned and operated by defendant Fogell. Many of Dr. Patel's patients visited the pharmacy at least once every two weeks, and some returned more frequently than that. Mr. Fogell was one of only a few pharmacists in the Flint area willing to honor Dr. Patel's prescriptions.
 
 
 6
 There was a direct telephone line between the doctor's office and the pharmacy, and Dr. Patel and Mr. Fogell spoke regularly over the telephone. Mr. Fogell tape-recorded the telephone conversations, and his tapes were eventually seized by the government. The tapes disclosed, among other things, that Dr. Patel and Mr. Fogell coordinated the number of patients who could have their prescriptions filled at the Beecher Pharmacy. Thus Dr. Patel was asked at one point to slow up his issuance of prescriptions because Mr. Fogell could not keep pace with the demand. On another tape, Fogell told Dr. Patel to be careful about a certain patient because the patient had recently been arrested and might be acting in an undercover capacity.
 
 
 7
 William Gaus, a registered pharmacist, testified that the prescriptions filled by Mr. Fogell were not issued in the usual course of professional medical treatment. He indicated that Mr. Fogell should have been aware that Dr. Patel was not operating a legitimate medical practice.
 
 
 8
 Defendant Cox worked as Dr. Patel's security guard for a time and then as his receptionist. His duties included collecting money, handing out prescriptions, and insuring that the doctor arrived home safely from the office. Upon request, Mr. Cox would have prescriptions ready so that they could be picked up without the patient first seeing the doctor. Cox sometimes saw the same person visit the office to pick up prescriptions several times in the same day. On occasion, patients would pay Mr. Cox to move them ahead of others who were waiting to see the doctor. Cox also received cocaine from a drug dealer who was a patient of Dr. Patel's. On one of Mr. Fogell's tapes, Cox was heard warning Fogell to clear out the traffic in front of the pharmacy because the state police were nearby.
 
 
 9
 Defendant Carl Brown was described as Dr. Patel's office manager. He counseled prospective patients on what to say to the doctor in order to obtain certain prescriptions. When an individual named Johnny Henderson went to see Dr. Patel for a written excuse from work, Carl Brown told Henderson what symptoms he should describe in order to receive an excuse and a prescription. Before Henderson first saw the doctor, Carl Brown told the doctor that Henderson had been there before when in fact he had not. After a brief medical examination, Henderson received a written excuse from work and a prescription. On subsequent occasions Carl Brown or his daughter wrote work excuses for Henderson at their home, and Henderson paid for the excuses with cocaine.
 
 
 10
 On one occasion, an undercover police investigator was unsuccessful in obtaining a prescription from Dr. Patel because she had returned to the office too soon and had stated that there was nothing wrong with her. Carl Brown interceded on her behalf and told the doctor that "she's all right." The doctor apologized and called in a prescription to the pharmacy for her.
 
 
 11
 The last defendant was Carl's brother, Charlie Brown. When Cox was absent, Charlie Brown acted as the receptionist and collected office-visit fees. He, too, was paid by patients for getting them in to see the doctor ahead of other patients. On numerous occasions he himself obtained prescriptions from Dr. Patel, had them filled at defendant Fogell's pharmacy, and then resold the drugs. Some of these purchases were charged to another person's health insurance.
 
 II
 
 12
 Pursuant to Rule 14, Fed.R.Crim.P., defendants Carl Brown, Fogell, and Cox moved prior to trial for a severance of counts 1 and 2, which were the conspiracy and criminal forfeiture counts, from counts 3 through 78, the mail fraud counts. The defendants argued that the conspiracy and forfeiture counts were misjoined with the mail fraud counts because the latter related only to Dr. Patel and had no connection with the other defendants. See Rules 8(a) and (b), Fed.R.Crim.P. The district court declined to grant the severance.
 
 
 13
 In a written motion filed during the trial, Dr. Patel sought suppression of the tapes that had been seized from defendant Fogell's pharmacy. Carl Brown's lawyer supported the motion orally; he claimed surprise and lack of time to prepare for dealing with the tapes. (The tapes took 16 hours to play in their entirety.) The U.S. attorney represented that the defendants had been aware of the government's intent to use the tapes at least 10 days prior to trial, and he said that the tapes had been available for review since the previous summer. The district court reserved its ruling on the motion until such time as the government sought to put them in evidence. The court also stated that Carl Brown's lawyer would have to make his claim at the appropriate time. When the time came, only Dr. Patel and Mr. Fogell raised objections to the use of the tapes; Carl Brown did not. The objections were overruled.
 
 
 14
 At the close of the government's case, all defendants moved for acquittal on the ground of insufficient evidence. The motions were denied.
 
 
 15
 The jury returned guilty verdicts against all defendants. Presentence reports prepared by a probation officer recommended that the defendants' base offense levels be calculated pursuant to the Drug Quantity Table (U.S.S.G. § 2D1.1(c)) using all prescriptions issued by Dr. Patel for Tylenol IV, a Schedule III drug, over a three-month period. The total weight of the Tylenol IV tablets was approximately 24 kilograms. Under this approach, each defendant received a base offense level of 20. The defendants objected, but the district court accepted the recommendation.
 
 
 16
 Defendant Fogell was sentenced to 36 months' imprisonment, to be followed by three years of supervised release. Defendant Cox, who was denied a two-level reduction for being a "minor participant," received 37 months to be followed by two years of supervised release. Defendant Carl Brown was sentenced to 40 months with two years of supervised release, and defendant Charlie Brown received 36 months with two years of supervised release.
 
 III
 
 17
 Defendants Fogell, Cox, and Carl Brown argue that there was insufficient evidence to establish that they were aware of and participated in the conspiracy to distribute prescription drugs illegally. When reviewing the sufficiency of evidence, however, this court does not sit as a trier of fact; the question we must answer is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985), cert. denied, 474 U.S. 1017 (1986), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). "It is for [jurors] and not for appellate courts, to say that a particular witness spoke the truth or fabricated a cock-and-bull story." Id., quoting United States v. Bailey, 444 U.S. 394, 414-415 (1980). In this case, it seems to us, the evidence from which a jury could find the defendants guilty beyond a reasonable doubt was so abundant that a specific delineation of it is not necessary. United States v. Martin, 897 F.2d 1368, 1373 (6th Cir.1990).
 
 IV
 
 18
 The defendants argue that there was a misjoinder under Rule 8 because little or no connection existed between the conspiracy charges and the mail fraud charges. The defendants go on to argue that the joinder "prejudiced" them within the meaning of Rule 14.
 
 Rule 8 Fed.R.Crim.P., provides that
 
 19
 "[t]wo or more offenses may be charged in the same indictment ... if the offenses charged ... are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."
 
 
 20
 Under Rule 8(b),
 
 
 21
 "[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."
 
 
 22
 For multiple defendants to be joined, there must be a sufficient nexus between the defendants and the single or multiple acts charged in the indictment. United States v. Davidson, 936 F.2d 856, 861 (6th Cir.1991). Any error predicated on misjoinder will require reversal "only if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.' " United States v. Lane, 474 U.S. 438, 449 (1986) quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946).
 
 
 23
 It does not appear to us that the standards established in Rule 8 were violated in this case, and we can find no prejudice that would have required the district court to take action under Rule 14. The offenses in question were all based on acts or transactions that were "connected together" or formed "parts of a common scheme or plan." The defendants were all alleged to have participated in the same "series" of acts or transactions constituting offenses. And there was overwhelming evidence of the defendants' guilt; with or without a severance, the end result would almost certainly have been the same. There was no renewal of the severance motion at the close of the evidence, moreover, and the failure to renew constituted a waiver. United States v. Swift, 809 F.2d 320, 323 (6th Cir.1987).
 
 V
 
 24
 As far as the sentences are concerned, defendants Charlie and Carl Brown contend that district court erred in using the total weight of the Tylenol IV tablets in determining the base offense level under the Drug Quantity Table. The contention is without merit. United States v. Elrod, 898 F.2d 60 (6th Cir.), cert. denied, 111 S.Ct. 104 (1990).
 
 
 25
 Defendants Fogell and Cox argue that the district court erred in using every Tylenol IV prescription issued by Dr. Patel over a three-month period.
 
 
 26
 "[T]he guidelines do not permit the District Court to hold a defendant responsible for a specific quantity of drugs unless the court can conclude the defendant is more likely than not actually responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible. If the exact amount cannot be determined, an estimate will suffice, but here also a preponderance of the evidence must support the estimate." United States v. Walton, 908 F.2d 1289, 1302 (6th Cir.), cert. denied, 111 S.Ct. 273 (1990) (emphasis in original).
 
 
 27
 We must accept the district court's finding on the amount of drugs for which the defendants are accountable unless the finding is clearly erroneous. Id. at 1300-1301. The evidence introduced in this case established that over a period that continued from 1983 through 1988, substantially all of Dr. Patel's patients visited him to receive illegal prescriptions. In view of the time span involved, it is far more likely than not that more than 24 kilograms of a Schedule III drug were issued outside the normal course of medical treatment and for no legitimate medical purpose. We see no clear error here. Moreover, a sentencing court must consider all of the drug quantities that were part of the same course of conduct, not just the those in the count or counts on which the defendant is convicted. United States v. Smith, 887 F.2d 104, 107 (6th Cir.1989). Cf. Comment 1 to U.S.S.G. § 1B1.3.
 
 
 28
 Defendant Cox argues that he should have received a two-level reduction for being a "minor participant" under U.S.S.G. § 3B1.2. " '[T]he minor' participant reduction is available only to a party who is 'less culpable than most other participants' and 'substantially less culpable than the average participant.' " United States v. Perry, 908 F.2d 56, 58 (6th Cir.), cert. denied, 111 S.Ct. 565 (1990), quoting the commentary to U.S.S.G. § 3B1.2. The determination of culpability turns largely on the facts, and the trial court's decision will be set aside only if clearly erroneous. Id. The district court's finding that Cox was not a minor participant is not clearly erroneous.
 
 VI
 
 29
 The remaining arguments advanced by the defendants need not detain us long. Mr. Fogell asserts (1) that it was error to let Mr. Gaus, the pharmacist witness, give an opinion regarding Fogell's knowledge of the conspiracy, and (2) that Fogell's own expert should have been allowed to testify concerning the types of prescriptions issued by doctors in the same area. These evidentiary rulings cannot be disturbed absent an abuse of discretion, United States v. Hickey, 917 F.2d 901, 904 (6th Cir.1990), and we see no abuse of discretion here.
 
 
 30
 As to Carl Brown's contention that the Fogell tapes were not provided in a timely manner, the district court directed Mr. Brown to make his objection when the government sought to put the tapes in evidence. Mr. Brown did not do so, and he is therefore barred from pressing the issue in this court.
 
 
 31
 With respect to the admission of the evidence concerning Mr. Cox's receipt of cocaine, we find no abuse of discretion on the part of the district court.
 
 
 32
 AFFIRMED.
 
 
 
 *
 The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation